IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| NICHOLAS JOSEPH GOODWIN, | : CIVIL ACTION NO. |
| Hall Cnty. ID # 368657, | : 2:15-CV-00006-RWS-JCF |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CAPT. DANNY WOODS, | : PRISONER CIVIL ACTION |
| LT. SULLIVAN, SGT. LACHNER, | : 42 U.S.C. § 1983 |
| DEPUTIES COOK, CALDERON and | : |
| ZELINSKI, | : |
|     Defendants. | : |

**MAGISTRATE JUDGE'S ORDER AND SECOND
NON-FINAL REPORT AND RECOMMENDATION**

Upon consideration of Plaintiff's complaint (Doc. 1), docketed on January 9, 2015, the undersigned recommended that Plaintiff's retaliation claim be allowed to proceed against Lt. Sullivan and Deputy Calderon. (Doc. 9). On March 20, the District Court adopted that recommendation; referred this matter to the undersigned for review of Plaintiff's amended complaint (Doc. 15); and reserved for later its consideration of the undersigned's recommendations to dismiss Plaintiff's claims of sexual harassment and an equal protection violation and to dismiss Defendants Capt. Woods, Sgt. Lachner and Deputies Cook and Zelinski. (Doc. 16; *see* Doc. 9).

In addition to his objections to the undersigned's Report and Recommendation

(Doc. 14), which the District Court will review at the appropriate time, Plaintiff has filed the following pleadings:

1. a combined motion (a) to enforce the Superior Court of Hall County's order for him to serve his 12 months in custody on work release, and (b) to require that he receive mental health counseling at the Hall County Detention Center ("HCDC"), where he is currently confined (Doc. 11);

2. a motion to add Marcus Neville, the current HCDC captain, as a Defendant or to substitute him for Defendant Woods, the HCDC captain when Plaintiff filed his initial complaint, "whichever is appropriate" (Doc. 12; *see* Doc. 11 at 1 (alleging that Captain Neville has refused to transfer Plaintiff to a prison work camp in retaliation for Plaintiff's having "started a lawsuit against the Jail"));

3. a motion to reconsider his motion for discovery, which this Court previously denied as premature (Doc. 13; *see* Doc. 8); and

4. a motion (Doc. 15) for leave to file an amended complaint (Doc. 15-1).

**I.   Plaintiff's Amended Complaint**

In his amended complaint, Plaintiff names the same six Defendants as in his initial complaint (Doc. 15-1 ¶¶ 4-9) and requests the Court's instruction as to "whether Marcus Neville should be added as a Defendant or replace Danny Woods as a Defendant" (*id.* at 12). Plaintiff alleges the following additional details about his treatment by HCDC officials.

On September 3, 2014, Plaintiff was sentenced to serve one year of custodial time in the Hall County work release program. (*Id.* ¶ 15). From September 9 to

2

October 13 and from November 26 to December 21, 2014, he participated in work release.  From October 13 to November 26 he was housed in the Gwinnett County Detention Center for a Gwinnett County court date.  (*Id.* ¶¶ 16-20, 23).

On December 18, 2014, Plaintiff returned to the HCDC from his daily work assignment and observed Officer Cook behaving erratically as he frisked returning work-release inmates, "went well beyond a routine frisk done by any other deputy," and made comments about each inmate's penis size.  (*Id.* ¶ 21).  "Moving to the Plaintiff, Deputy Cook again made comments about the Plaintiff's penis size while holding his genitals and [] then asked Plaintiff to call him 'Big Daddy[,]' and while pointing to a broken latex glove on his hand, stated, 'I guess you're pregnant now, Goodwin.' " (*Id.*).  Cook's erratic behavior continued as he transported Plaintiff and other inmates to their cell tower.  Plaintiff approached an officer to ask, "Is this guy off his medication or something?"  (*Id.*).  "Due to this incident of sexual abuse/harassment, Plaintiff [alleges that he] has experienced depression, sleep deprivation, embarrassment and humiliation [for] which he has sought and requested professional treatment and counseling," but "he has received no medical help for [his] emotional and mental" problems.  (*Id.*).  On or about December 20, Plaintiff described Deputy Cook's actions and behavior to Officers Calderon and Zelinski.

3

(*Id.* ¶ 22).

On December 21, several deputies, including Calderon and Zelinski, made "an extreme show of force similar to a military operation" in Plaintiff's cell pod, and "Sgt. Atkins and Deputy Calderon singled the Plaintiff out to be handcuffed and taken to the intake/booking area of the" HCDC. (*Id.* ¶ 25). Calderon told Plaintiff that tobacco had been found in a trash can in his cell, although Plaintiff's roommate, who shared the cell and who had access to the same trash can, was not detained or searched, as Plaintiff was. (*Id.* ¶¶ 26-27). Plaintiff announced that it was "highly coincidental that [he was] being accused of having tobacco, without being shown proof, and kicked out of work release after reporting the incident with Deputy Cook." He received no response. (*Id.* ¶ 28).

In the early morning hours of December 22, Plaintiff was taken to segregation, or "the hole." (*Id.* ¶¶ 30-31). Later that day, to reduce his tenure there from 16 to 8 days, Plaintiff "reluctantly signed under complete duress" a "Hall County Discipline Housing Form." (*Id.* ¶ 32). Plaintiff remained in the hole from December 22 to 28, 2014, with no mattress between 6 a.m. and 11 p.m. and with the "loss of privileges and quality of life in prison living conditions, and loss of the limited liberty enjoyed by prisoners." (*Id.* ¶ 33). He was unable to work, attend classes, pay

4

child support, associate with other prisoners, participate in outdoor recreation or religious services, or contact his family for Christmas. On this basis, Plaintiff raises a due process claim against Lt. Sullivan, Sgt. Lachner, and Deputies Calderon and Zelinksi, in addition to his previously stated retaliation claim. (*Id.*).

On December 29, Plaintiff was brought to the work release office, where both Sullivan and Lachner "made it clear to Plaintiff that if [he] proceeded with his civil rights complaint, he would not return to work release, for 'his own protection,' and because of the [HCDC's] 'legal exposure.' " (*Id.* ¶ 36). On December 30, internal affairs officer Lt. Dale Long reiterated Sullivan and Lachner's message and "went further by explaining to Plaintiff that he would be 'shipped out' to a different county" if he did not abandon his claim. (*Id.* ¶ 37). For this reason, Plaintiff signed a form withdrawing his grievance against Deputy Cook, but on January 5, 2015, he reconsidered that decision and filed this 42 U.S.C. § 1983 action. (*Id.* ¶¶ 37-38).

Plaintiff alleges that he has been singled out for discriminatory treatment as a "class of one" by being denied the opportunity to return to work release. (*Id.* ¶ 39). He notes that since he has been placed into the general population, "roughly a dozen other inmates" have returned to work release "for equal or greater offenses than the one he was accused of, [while] he remains out of work release." (*Id.*). He claims

5

that other than a 5-minute visit from a chaplain, he has received no counseling at the HCDC for his mental and emotional distress. (*Id.* ¶ 42). He argues that "the Sheriff's Department, especially that of Capt. Danny Woods, has acted negligently by not removing those Defendants or reprimanding them for said actions in [his] claim." (*Id.*). Plaintiff seeks "compensatory, punitive and nominal [damages] where they apply for the mental and emotional injuries he has incurred." (*Id.* at 13). He also seeks compensation for lost wages. (*Id.*).

## II. The Legal Framework

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

6

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives." *Id.* at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

### III. Discussion

"A party may amend its pleading once as a matter of course within [] 21 days after serving it." *See* Fed. R. Civ. P. 15(a)(1). As no Defendant has yet been served with Plaintiff's complaint, his motion to amend (Doc. 15) is **GRANTED**.

#### A. Plaintiff's Amended Retaliation Claim

Plaintiff's only relevant new allegation regarding his retaliation claim is that not only Lt. Sullivan, but also Sgt. Lachner pressured him to withdraw his grievance against Deputy Cook by telling him that unless he did so, he would not be allowed to return to work release. (*See* Doc. 15-1 ¶ 36). As the Court has already determined that Plaintiff has stated a retaliation claim against Lt. Sullivan, this new allegation is sufficient to state a retaliation claim against Sgt. Lachner as well. (*See* Doc. 9 at 4-5).

#### B. Plaintiff's Amended Sexual Abuse/Harassment Claim

7

Plaintiff has provided no relevant new allegation against Deputy Cook. As the undersigned noted previously, Plaintiff has not shown a sufficiently serious objective injury to allow his sexual abuse/harassment claim to proceed. (*See* Doc. 9 at 5-7 & n.1).

### C.     Plaintiff's Amended Equal Protection Claim

A prisoner "must plausibly allege two elements" to survive the initial screening of an equal protection claim: "(1) that 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) that 'his discriminatory treatment was based on some constitutionally protected interest,' such as race, religion, or national origin." *Jackson v. Brewton*, No. 13-14103, 2014 U.S. App. LEXIS 24435, at *7 (11th Cir. Dec. 24, 2014) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001), and *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). The undersigned previously concluded that Plaintiff had failed to state a plausible claim for relief under the foregoing standard (*see* Doc. 9 at 7-8), and Plaintiff has not remedied that deficiency in his amended complaint, although he now alleges that he is entitled to relief as a "class of one" (Doc. 15-1 ¶ 39).

"The Supreme Court has recognized 'class of one' equal protection claims.

8

A plaintiff can establish a 'class of one' claim by showing that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Bumpus v. Watts*, 448 Fed. Appx. 3, 4-5 (11th Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). But "[t]o be 'similarly situated,' the comparators must be prima facie identical in all relevant respects.' " *Thorne v. Chairperson Fla. Parole Comm'n*, 427 Fed. Appx. 765, 771 (11th Cir. 2011) (quoting *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010)).

In *Thorne*, the Eleventh Circuit applied the same *Iqbal* standard of review that applies here and affirmed the dismissal of the plaintiff's complaint for failure to state a claim for relief. *Id.* at 768-69. The court noted that the plaintiff's

> amended complaint failed to state an equal protection claim because it did not show that he was treated differently from similarly-situated prisoners. [He] did assert that other prisoners who had been convicted of murder and who had previous parole violations had received earlier release dates and were interviewed every two years rather than every five years, *but he did not show that those other prisoners were similar to him in all relevant respects*. For example, it is unclear whether the other prisoners had been convicted of multiple separate offenses, whether they had an escalating history of criminal conduct, or whether their release might cause an unreasonable risk to others, three factors that the Parole Commission relied upon in [his] case. *In short, [the plaintiff's] allegations of disparate treatment were not detailed enough to raise his right to relief above a speculative level.*

9

*Id.* at 771 (emphasis added).

Plaintiff's amended complaint suffers from a similar shortcoming. The entirety of his description of his alleged comparators is as follows: "While Plaintiff has watched roughly a dozen inmates come and go from his current pod in tower B-5, for equal or greater offenses than the one he was accused of, he remains out of work release where he was court ordered to be." (Doc. 15-1 ¶ 39). Plaintiff has offered no specific information about these alleged comparators. The Court finds, therefore, that he has not stated a plausible claim that these comparators are "similar to him in all relevant respects." *See Thorne*, 427 Fed. Appx. at 771. Plaintiff's equal protection claim, as amended, also fails.

### D. Plaintiff's New Due Process Claim

"The minimum requirements of due process for prisoners facing disciplinary action . . . are (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when consistent with institutional safety and correctional goals." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), for proposition that "prisoners may not be deprived of statutory 'good-time credits' without due process"). The decision of a

10

prison disciplinary board satisfies constitutional due process requirements if it is supported by at least "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

But the procedural requirements noted above attach only when a prisoner has been deprived of a constitutionally protected liberty interest, such as a change in the conditions of his confinement so severe that it essentially exceeds the sentence imposed by the court, or a deprivation of some benefit resulting in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see also Sandin*, 515 U.S. at 483-84 ("recogniz[ing] that States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,] [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, [such as a] transfer to [a] mental hospital [or the] involuntary administration of psychotropic drugs[], nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (citations omitted)).

11

There is nothing in Plaintiff's amended complaint to suggest that his disciplinary isolation for seven days from December 22 to December 28, 2014, resulted in an atypical and significant hardship beyond the ordinary incidents of prison life. *See Id.*, 515 U.S. at 485-86 (concluding that prisoner's "discipline in segregated confinement [for thirty days] did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Plaintiff has failed to state a due process claim for relief.[1]

### E. **Plaintiff's New Supervisory Liability Claim**

---

[1] And "[a]n inmate removed from a work-release program for various pen[o]logical reasons and transferred to a medium security prison does not possess a protected liberty interest in remaining in work release, because confinement within the prison walls constitutes an ordinary incident of prison life. It is not atypical." *Sin Eddie Ford v. Ala. Dep't of Corr.*, No. 2:12cv657-TMH (WO), 2014 U.S. Dist. LEXIS 43690, at *12-13 (M.D. Ala. Mar. 4, 2014) (internal quotations omitted) (citing *Dominique v. Weld*, 73 F.3d 1156, 1160 (1st Cir. 1996), and *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 669 (8th Cir. 1996), to the effect that the "return of an inmate to prison after revocation of his work release status imposed neither an atypical nor significant deprivation under *Sandin* because prison is not atypical of what inmates have to endure in daily prison life" (internal quotations omitted)), *adopted by* 2014 U.S. Dist. LEXIS 42873 (M.D. Ala. Mar. 31, 2014); *see also Fulwood v. Fed. Bureau of Prisons*, 568 Fed. Appx. 753, 756 (11th Cir. 2014) ("[A]n inmate has no liberty interest in a particular classification, prison assignment, or transfer, even if he experiences more burdensome conditions than before." (citing *McKune v. Lile*, 536 U.S. 24, 39 (2002), in which the Supreme Court "reject[ed an] inmate challenge to [an] expected demotion in [his] custodial status classification")); *Galiana v. Immigration & Custom Enforcement*, No. 5:11cv255/MMP/EMT, 2012 U.S. Dist. LEXIS 16905, at *6, 9 (N.D. Fla. Jan. 11, 2012) (rejecting petitioner's claim that Immigration and Customs Enforcement ("ICE") detainer "preclud[ed] him from obtaining minimum or community custody status and render[ed] him unqualified for early release programs and work release, in violation of his due process and equal protection rights" because he "failed to allege facts showing that the ICE detainer imposes a significant or atypical hardship on him in relation to ordinary incidents of prison life"), *adopted by* 2012 U.S. Dist. LEXIS 16907 (N.D. Fla. Feb. 10, 2012).

A supervisor is individually liable for the actions of his subordinates only when he "personally participates in the alleged unconstitutional conduct or when there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (noting the well-established rule "that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability").

This causal connection can be established by showing that (1) the supervisor knew about and failed to correct a widespread history of abuse, or (2) he had a custom or policy that resulted in a constitutional violation, or (3) the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotations omitted); *see Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (stating that the "causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action"). But "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Cottone*, 326 F.3d

13

at 1360. Plaintiff has not met this standard with respect to either HCDC Captain, former Capt. Woods or current Capt. Neville.[2]

### F. Plaintiff's Motion To Enforce State Court Order

Plaintiff asks this Court to enforce the order of the Superior Court of Hall County that he serve his custodial sentence on work release. (Doc. 11). That motion is not only premature, because Plaintiff asks the Court to grant him relief before Defendants have been given a chance to respond to his claims, but it also appears that Plaintiff does not have a federal constitutional right, enforceable through the Due Process Clause, to serve his sentence on work release.

Although a state itself, rather than the Constitution, may create a liberty interest, the Georgia statute entitled "Work-release programs for county prisoners,"

---

[2]Plaintiff's hearsay allegation that Capt. Neville refused to transfer him to a prison work camp in retaliation for Plaintiff's filing this lawsuit (*see* Doc. 11 at 1) is insufficient to sustain a plausible claim for relief against Capt. Neville either directly or as a supervisor. Plaintiff has no federal constitutional right to a transfer or to be considered for a transfer. *See Olim v. Wakinekona*, 461 U.S. 238, 248 (1983) ("A conviction . . . empowers the State to confine the inmate in any penal institution . . . unless there is state law to the contrary or the reason for confining the inmate in a particular institution is itself constitutionally impermissible."); *Edwards v. Fernandez-Rundell*, 512 Fed. Appx. 996, 997 n.1 (11th Cir. 2013) ("Even if we were to accept that [the plaintiff's] § 1983 claim is based on the place of his confinement, [the] claim would still fail to state a claim for relief. The Supreme Court has held that 'the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.' *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)." (citation altered)). And although a retaliatory transfer may be actionable, the Court is not aware of any caselaw suggesting that an allegedly retaliatory "failure to transfer" is likewise actionable. Plaintiff also failed to include his new allegation against Capt. Neville in his amended complaint or as the basis for any motion that he has submitted.

O.C.G.A. § 42-1-4, does not do so because it reserves substantial discretion to state officials regarding who may participate in work release. *See* § 42-1-4(a) ("Any person sentenced to confinement as a county prisoner . . . *may, if there is reasonable cause to believe that he will honor his trust, be allowed* to participate in a work-release program as authorized by this Code section." (emphasis added)); § 42-1-9(b) (Certain county jail detainees "*may, in the discretion of the sheriff and subject to the eligibility requirements . . ., be assigned* to a work-release program under supervision of the sheriff." (emphasis added)); *see also Sultenfuss v. Snow*, 35 F.3d 1494, 1502 (11th Cir. 1994) (*en banc*) (concluding that Georgia's parole-eligibility scheme does not create a "protected liberty interest in parole" because "[t]o give rise to a liberty interest in parole, the statutes and regulations must meaningfully limit the discretion of state officials. Here, the substantial discretion reserved by the Board belies any claim to a reasonable expectation of parole. Although the Board is required to follow some relatively strict procedures, the statutes and the Guidelines, acting in conjunction, do not mandate the grant of parole if specified criteria are satisfied."). Plaintiff's motion to enforce the state court order should therefore be denied, and his motion for mental health counseling is also premature.

**IV.** <u>**Conclusion**</u>

Plaintiff's motion to amend his complaint (Doc. 15) is **GRANTED**. Plaintiff's motion for discovery (Doc. 13) is once again **DENIED** as premature. Discovery, if allowed, will begin no sooner than 30 days after a Defendant has filed a response to Plaintiff's complaint. *See* LR 26.2.A., NDGa.

**IT IS RECOMMENDED** that Plaintiff be **ALLOWED** to add Sgt. Lachner as a Defendant on his retaliation claim; that Plaintiff's motion to amend his sexual harassment and equal protection claims be **DENIED**; that Plaintiff's motion to add due process and supervisory liability claims be **DENIED**; that Plaintiff's motion to enforce a state court order and for mental health counseling (Doc. 11) be **DENIED**; and that Plaintiff's motion to add Capt. Neville as a defendant (Doc. 12) be **DENIED**.

**SO ORDERED and RECOMMENDED** this 15th day of April, 2015.

 /s/ *J. CLAY FULLER*
 J. CLAY FULLER
 United States Magistrate Judge