# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | | |
|---|---|---|
| NICHOLAS JOSEPH GOODWIN, GDC ID # 1182853, Plaintiff, | : : : : | CIVIL ACTION NO. 2:15-CV-00006-RWS-JCF |
| v. | : : | |
| LT. SULLIVAN, SGT. LACHNER, DEPUTY CALDERON, Defendants. | : : : | PRISONER CIVIL ACTION 42 U.S.C. § 1983 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

On November 12, 2015, Defendants, officials of the Hall County Detention Center ("HCDC") in Gainesville, Georgia, moved for summary judgment against Plaintiff on his claims that they had retaliated against him, in violation of his First Amendment rights, by removing him from work release and placing him in lockdown after he complained that an HCDC guard had sexually harassed him, and by transferring him to state prison after he filed this lawsuit. (Doc. 49). On November 20, the Clerk issued a notice to Plaintiff to respond to the Defendants' motion within 21 days. (Doc. 50). Plaintiff has not done so.[1]

---

[1] Official records indicate Plaintiff was transferred from the HCDC to state prison on or about April 2, 2015, and then subsequently released on or about November 27, 2015. *See* dcor.state.ga.us/GDC/OffenderQuery/jsp/ OffQryRedirector.jsp for GDC ID # 1182853 (last visited Jan. 28, 2016). He has not provided the Court with his current address.

## I. Plaintiff's Complaint And Amended Complaint

After reviewing Plaintiff's January 5, 2015 complaint and March 9, 2015 amended complaint, the Court allowed his retaliation claims against Defendants to proceed, summarizing his allegations as follows:

> On September 3, 2014, Plaintiff was sentenced to serve one year of custodial time in the Hall County work release program. From September 9 to October 13 and from November 26 to December 21, 2014, he participated in work release. From October 13 to November 26 he was housed in the Gwinnett County Detention Center for a Gwinnett County court date.
>
> On December 18, 2014, Plaintiff returned to the HCDC from his daily work assignment and observed Officer Cook behaving erratically as he frisked returning work-release inmates, "went well beyond a routine frisk done by any other deputy," and made comments about each inmate's penis size. "Moving to the Plaintiff, Deputy Cook again made comments about the Plaintiff's penis size while holding his genitals and [] then asked Plaintiff to call him 'Big Daddy[,]' and while pointing to a broken latex glove on his hand, stated, 'I guess you're pregnant now, Goodwin.'" Cook's erratic behavior continued as he transported Plaintiff and other inmates to their cell tower. . . . On or about December 20, Plaintiff described Deputy Cook's actions and behavior to Officers Calderon and Zeliski.
>
> On December 21, several deputies, including Calderon and Zeliski, made "an extreme show of force similar to a military operation" in Plaintiff's cell pod, and "Sgt. Atkins and Deputy Calderon singled the Plaintiff out to be handcuffed and taken to the intake/booking area of the" HCDC. Calderon told Plaintiff that tobacco had been found in a trash can in his cell, although Plaintiff's roommate, who shared the cell and had access to the same trash can, was not detained or searched, as Plaintiff

2

was. Plaintiff announced that it was "highly coincidental that [he was] being accused of having tobacco, without being shown proof, and kicked out of work release after reporting the incident with Deputy Cook." He received no response.

In the early morning hours of December 22, Plaintiff was taken to segregation, or "the hole." Later that day, in order to reduce his tenure there from 16 to 8 days, Plaintiff "reluctantly signed under complete duress" a "Hall County Discipline Housing Form." Plaintiff remained in the hole from December 22 to 28, 2014 . . . .

On December 29, Plaintiff was brought to the work release office, where both Sullivan and Lachner "made it clear to Plaintiff that if [he] proceeded with his civil rights complaint, he would not return to work release, for 'his own protection,' and because of the [HCDC's] 'legal exposure.' " On December 30, internal affairs officer Lt. Dale Long reiterated Sullivan and Lachner's message and "went further by explaining to Plaintiff that he would be 'shipped out' to a different county" if he did not abandon his claim. For this reason, Plaintiff signed a form withdrawing his grievance against Deputy Cook, but on January 5, 2015, he thought better of that decision and filed this 42 U.S.C. § 1983 action.

(Doc. 18 at 2-5 (citations omitted)).

## II. Defendants' Undisputed Facts

Because Plaintiff has not responded to Defendants' summary judgment motion, the following facts are undisputed.

In late December 2014, an inmate informant notified Deputy Roach of the Hall County Sheriff's Office that [Plaintiff] and some other inmates on work release were bringing tobacco and synthetic marijuana called "Gucci" from their place of employment into the HCDC. Based on

3

this information, on December 21, 2014, Sergeant Atkins arranged a shakedown of pods 108, 117 and 133. There are approximately 14 cells in each pod. Deputy Calderon, along with Sergeant Atkins, Deputy Bennett and Officer Marley, conducted a shakedown of pod 117, which included [Plaintiff's] cell.

While searching cell 124 in pod 117, Deputy Calderon found a rolled cigarette in [Plaintiff's] property bin and a small bag of tobacco in a trash can. Inmates are not permitted to be in possession of tobacco, and those who are found possessing such contraband are removed from work release and are required to serve time in lockdown. Indeed, the court order which sentenced [Plaintiff] to the work release program conditioned [his] participation in the program on his compliance with the "the rules of the facility."

After the tobacco was found in [Plaintiff's] cell, officers escorted him to booking to be strip-searched. The search revealed another rolled cigarette under his watch. Because [Plaintiff] was found to be in possession of contraband, he was removed from work release.

As [Plaintiff] was being removed form work release and returned to the general population of the jail, he told Officer Zeliski to tell Sergeant Lachner to "be ready" as he intended to file a grievance on every officer working within the work release program. [Plaintiff] was then taken to lockdown. [Plaintiff] pleaded guilty to the in-house charge of possession of unauthorized items on December 22, 2014, and was sanctioned to serve eight days in lockdown.

On December 26, 2014, [Plaintiff] followed through on his statement to Officer Zeliski and submitted a written grievance against Deputy Cook. Lt. Dale Long of internal affairs thereafter began his investigation of the grievance and interviewed [Plaintiff, who] admitted that Deputy Cook's actions did not reach the level of sexual assault. Instead, [Plaintiff] admitted, he filed the grievance out of frustration after he was removed from work release. After discussing his grievance at

>   length, [Plaintiff] stated that he did not wish to proceed with a complaint against Deputy Cook and voluntarily withdrew his request to have the incident investigated.
>
>   On or around January 26, 2015, [Plaintiff] pleaded guilty in the Superior Court of Gwinnett County to driving under the influence of alcohol and possession of marijuana. The Court sentenced [Plaintiff] to confinement in the custody of the State Department of Corrections. As a result, on or around April 2, 2015, [Plaintiff] was transferred from the HCDC to Central State Prison, a Georgia Department of Corrections ("DOC") facility. No one at the HCDC made, or had the power to make, the decision to admit [Plaintiff] into the state prison system.

(Doc. 49-1 (Defs.' Br.) at 5-8 (citations and footnotes omitted); *see* Doc. 49-8 (Defs.' Statement of Undisputed Material Facts); Docs. 49-2 – 49-7 (Supporting Exs.)).

## III. Summary Judgment Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[Former] Rule 56(c) [now Rule 56(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the

5

non-movant. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 970 (11th Cir. 2002) (internal quotations omitted). And "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

The movant bears the initial burden of demonstrating that summary judgment is warranted. *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant may do so by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant has properly supported the summary judgment motion, the non-movant then must "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in the non-movant's favor. *Bailey v. Allgas, Inc.*,

6

284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "non-moving party must come forward with *significant, probative evidence*" (emphasis added)). "[C]onclusory assertions . . . [without] supporting evidence are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

**IV.   Discussion**

    **A.   The Law Of Retaliation**

To prevail on a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). A prisoner has a right to complain about the conditions of his confinement without fear of retaliation.

> It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement. *See, e.g., Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. *Id.* To prevail, the inmate must establish

7

> these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005).

*Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *see id.* at 1276 n.15 (citing *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006), to the effect that the "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment"). And a retaliatory transfer may violate a prisoner's First Amendment rights.

> It is well established that inmates are protected by the First Amendment from retaliation by prison officials for filing lawsuits or administrative grievances. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). "To state a first amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech," *id.*, [by] a practice that is "not reasonably related to legitimate penological objectives" or [by] certain actions [taken] "with the intent of chilling that First Amendment right." *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995), citing *Turner v. Safley*, 482 U.S. 78, 85-89 (1987).

*Calloway v. Stewart*, No. 14-283-CG-M, 2014 U.S. Dist. LEXIS 157589, at *30 (S.D. Ala. Oct. 9), *adopted by* 2014 U.S. Dist. LEXIS 156974 (S.D. Ala. Nov. 6, 2014).

8

> On the other hand, however,
>
> *[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report.* Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel. In the particular circumstances here, [plaintiff] has suffered adverse action ([] 30 days' disciplinary confinement) because he actually violated the prison rules and not because of his earlier grievances. To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance. Because he was guilty of the disciplinary charges resulting in the disciplinary harm at issue, [plaintiff's] retaliation claim fails.

*O'Bryant v. Finch*, 637 F.3d 1207, 1215-16 (11th Cir. 2011) (emphasis added) (affirming grant of summary judgment to defendant); *see Malloy v. Peters*, 617 Fed. Appx. 948, 950, 951 (11th Cir. 2015) (affirming grant of summary judgment and citing *O'Bryant* to the following effect: "An inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process. Adequate due process requires that the inmate have (1) advance written notice, (2) an opportunity to present witnesses and evidence at his disciplinary hearing, and (3) a written statement from the factfinder outlining the evidence relied upon and

9

the reasons for the disciplinary action. Due process requires some evidence in the record that supports the decision of the disciplinary board." (citations omitted)); *Taylor v. Crews*, No. 4:14cv98-MW/CAS, 2015 U.S. Dist. LEXIS 113212, at *24-25 (N.D. Fla. July 27) (granting motion to dismiss retaliation claim because "there is no causal connection between a disciplinary report and a prisoner's freedom of speech if the disciplinary action would have been taken regardless of the prisoner's protected speech" (citing *O'Bryant*, 637 F.3d at 1217), and noting that "even if [defendant] had some impermissible reason to charge Plaintiff with a disciplinary report, Plaintiff would have been disciplined anyway as the disciplinary team found him guilty of the charged conduct and his disciplinary report was not subsequently overturned"), *adopted by* 2015 U.S. Dist. LEXIS 113207 (N.D. Fla. Aug. 24, 2015).

### B. <u>Analysis</u>

Here, it is undisputed that even if Defendants "had some impermissible reason to charge Plaintiff with a disciplinary report, Plaintiff would have been disciplined anyway" (*see id.*) because on December 21, 2014, after tobacco was discovered in his property bin and on his person, he was relocated "pending investigation for inmate rule violation(s) [—] major # 5, pg. 39, poss[ession] of unauthorized items," and on December 22 he pled guilty to the charge. (*See* Doc. 49-4 at 4 (HCDC Discipline /

10

AO 72A
(Rev.8/82)

Housing Form); Doc. 49-3 at 16-17). It is also undisputed that when Plaintiff pled guilty, he was aware of the evidence against him and the reason for his relocation and subsequent discipline. (*See* Doc. 49-3 at 15 (Zeliski's Inmate Diary Report for Dec. 21, 2014 (quoting Plaintiff as saying, "You are ruining my life. I have kids and you are sending me back to the jail because of cigarettes."))).

To the extent that Plaintiff might argue, if he had responded to Defendants' summary judgment motion, that the December 22 disciplinary proceeding violated his limited due process rights as a prisoner, outlined above in Sect. IV. A., his admission of guilt waives any such claim, much as a guilty plea does in the criminal context. *See Vasiloff v. United States*, 622 Fed. Appx. 881, at *3-4 (11th Cir. 2015) (rejecting appellant's § 2255 challenge to his indictment on multiplicity grounds because in his guilty plea proceedings he "admitted all the elements of the formal criminal charges [and thus] waived all non-jurisdictional defects in his proceedings" (citing *United States v. Johnson*, 89 F.3d 778, 784 (11th Cir. 1996), to the effect that "a defendant's factual basis challenge presents a non-jurisdictional defect and, as such, is waived by a guilty plea")).

And to the extent that Plaintiff might argue that his guilty plea was coerced, he has offered no factual support for the allegation in his complaint that he "reluctantly

11

signed [the plea form] under complete duress" in order to reduce his disciplinary segregation from 16 to 8 days.  (*See* Doc. 18 at 4).  And there is no suggestion in Plaintiff's complaint that any of the three named Defendants coerced him into pleading guilty.  (*See* Doc. 15-1 ¶ 32 (alleging that Officer Young offered to reduce his lockdown time from 16 to 8 days if he pled guilty to the possession-of-tobacco charge)).  There is thus no genuine issue of material fact for trial on this point.  And Plaintiff has never alleged that he in fact did *not* possess tobacco in violation of HCDC rules.  Indeed, during his video-recorded meeting with Lt. Long on December 30, 2014 (Ex. B to Long Decl. (Doc. 49-3 at 21)), Plaintiff admitted that he smoked tobacco while on work release and most likely forgot to dispose of what little he had on his person before returning to the HCDC the day before the search.

It is also undisputed that on January 26, 2015, Plaintiff entered a non-negotiated plea in the Superior Court of Gwinnett County to a charge of driving under the influence of alcohol, for which he received a 5-year sentence, 1 year to serve in "confinement in such institution as the Commissioner of the State Department of Corrections may direct," with credit for time served.  (*See* Doc. 49-7 at 1-3 (Plaintiff also received a 12-month probated sentence for possession of marijuana)).  Defendants state that they had nothing to do with Plaintiff's subsequent transfer to state prison (*see*

12

Doc. 49-4 (Sullivan Decl. ¶¶ 5-7); Doc. 49-6 (Lachner Decl. ¶¶ 4-6)), and Plaintiff does not dispute this fact.

## V. Conclusion

Because Plaintiff has not demonstrated the existence of a triable issue of material fact with regard to his retaliation claims, those claims should be dismissed as a matter of law. *See Bailey*, 284 F.3d at 1243; *Chanel, Inc.*, 931 F.2d 1477. **IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 49) be **GRANTED**; that Plaintiff's motion for appointment of counsel (Doc. 37) be **DENIED**; and that this civil action be **DISMISSED**.

In light of this recommendation, the undersigned **WITHDRAWS** his previous recommendation (Doc. 41) to deny Defendants' motion to dismiss Plaintiff's complaint for lack of exhaustion. **IT IS RECOMMENDED** instead that Defendants' motion (Doc. 35) be **DENIED as moot**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this <u>29th</u> day of <u>January</u>, 2016.

                /s/ *J. CLAY FULLER*
                J. CLAY FULLER
                United States Magistrate Judge

AO 72A
(Rev.8/82)